REDMANN, Chief Judge.
The beneficiaries of wills and an act of adoption appeal from a judgment invalidating those instruments on the ground of mental incapacity of the testatrix-adopter at the times of their execution.
The question is whether opponents proved the mental incapacity. Their evidence, in the form of both medical expert and lay testimony, is abundant proof, if believed by the trier of fact, that decedent was incapacitated. From the medical point of view, long before the date of the first invalidated will, her brain was so incapacitated by reduction of its blood flow by advanced arteriosclerosis (after one major and other lesser strokes) that substantial improvement thereafter was a medical improbability. From the lay point of view, following the strokes, both before and especially after her husband’s death decedent was severely limited in her ability to understand events (such as her husband’s death or her having defecated upon herself) and to recognize persons including long-time friends. (Even proponents’ expert, who saw decedent the day of the second invalidated will and deemed her having that day defecated on herself before arriving at his office “physical impropriety [having] nothing to do with her mental condition,” also testified “Well, I’m surprised that she had an operable conversation and that she was mobile, or that she had desires she wished to express....”)
*1071 There was, however, medical expert and lay testimony presented by the proponents of the questioned documents. What may seem to a reviewing judge an especially credible part of this evidence for proponents is the testimony of some nurse-sitters regarding decedent’s alienation from (and therefore silence in the presence of) her husband’s relatives and in-laws (some of whom were beneficiaries under her will made before her husband’s death). In particular, one sitter testified of decedent’s intense upset upon being served by the sheriff with the petition by her husband’s family for her interdiction. If the best parts of proponents’ evidence were believed, one might infer that, except for the serious stroke that deprived her of fluency of speech, decedent was afflicted with perhaps not much more than the infirmities too often found in old age (including forgetfulness, confusion and incontinence of bladder and, rarely, of bowel). One might further infer that, with no close relatives of her own, she became somewhat estranged from her husband’s relatives, as they visited her far less, perhaps in part because of her stroke-damaged condition: and she became more and more grateful towards the friend who visited her and her husband and, after her husband’s death, visited her alone. There is testimony from several witnesses, including a district judge who saw her at her home on the occasion of her interdiction, that the decedent was happy and relaxed in that friend’s presence, and that she communicated with him rather than with others (including the judge-witness). One might well imagine that such an elderly person, possessing testamentary capacity, could reasonably decide to leave his or her estate not to the relatives of his or her predeceased spouse but to that friend (or, at the friend’s suggestion, to the friend’s children).
But some of the best proponents’ evidence is not very persuasive (such as that of her priest, that she knew him and her eyes lit up when he entered her room, and that he had no doubt of her “contact with reality”); and some is not thoroughly credible (such as that of the lawyer who drafted the first will, that she went to her husband’s' funeral and then to the will-writing ceremony: all other witnesses who testified on the point testified that she did not attend her husband’s funeral).
The entire record considered, we cannot conclude that the trial court was clearly wrong, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), in its conclusion that, in effect, opponents overcame the presumption of capacity by “clear and convincing evidence,” Succession of Lyons, 452 So.2d 1161, 1166 (La.1984), and proved that decedent lacked testamentary capacity on August 12 and 28, 1977 and April 18, 1978. The two wills and the act of adoption were therefore correctly declared invalid.
Opponents ask by answer to the appeal that the judgment be amended to name the “proponents” cast for the costs. One may agree that, if execution became necessary, a judgment casting “interve-nors” or “third-party defendant” or “proponents” for costs does not tell the sheriff whose property he should seize and sell (although one casting “plaintiff” or “defendant” might do so). But, similarly, a judgment for “costs” does not tell the sheriff the amount of the judgment and it therefore cannot be executed in any case until the costs are fixed. The rule to fix costs, C.C.P. 1920, is filed against persons by name and in that proceeding it will be established not only how much is owed but also the persons against whom the costs are fixed. Only after the judgment on the rule to fix costs can fi. fa. issue as required by C.C.P. 2291. Accordingly there is no necessity that this court amend the judgment to name the “intervenors” cast for costs.
Affirmed.